FAIRBAIRN et al. v. RAUSCH.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. BROKERS—SALE OF STOCK—AUTHORIZATION.
    Where defendant directed her brokers to sell certain stock at the market price when all stocks were subject to violent fluctuations, she was bound by the sale, although before the order to sell could be executed the price had fallen below that at which it stood when the order was given.

2. SAME—COERCION.
    In an action by brokers to recover a balance resulting from a loss in stock transactions carried on by plaintiffs for defendant, it appeared that the loss resulted from a sale by plaintiffs of certain stock owned by defendant under an alleged direction to sell at the market price. There was evidence that before this direction was alleged to have been given, plaintiffs demanded additional margins from defendant's agent, and that he

requested a reasonable time in which to furnish them, to which plaintiffs replied that they would sell defendant out at once. *Held*, that this statement did not prevent the sale from being binding on defendant if it was in fact authorized by her, and was made in good faith.

Appeal from Trial Term, New York County.

Action by Robert A. Fairbairn and another against Rixtine Rausch. From a judgment for defendant, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John M. Stearns, for appellants.
Joseph Fettretch, for respondent.

INGRAHAM, J. The action was brought to recover the balance of an account due to the plaintiffs resulting from a loss in stock transactions carried on by the plaintiffs, who were brokers for the defendant. The plaintiffs were carrying other stocks, including 100 shares of steel common for the defendant on a margin, and on May 9, 1901, sold this 100 shares of steel common at $28 per share, from which sale there resulted an indebtedness of the defendant to the plaintiffs of the sum of $1,316.60, to recover for which this action was brought. The defendant repudiated the right of the plaintiffs to sell this stock at the price named, and the evidence shows that, if the plaintiffs had held the stock for a few hours, it would have realized a price largely in excess of that at which it was sold, and there would have been no indebtedness. No counterclaim was alleged, and the determination of the action depended upon the authority of the plaintiffs to sell the stock on the 9th day of May, 1901, at $28 per share.

On behalf of the plaintiffs there was testimony to show that on the morning of the 9th of May, 1901, before the opening of the stock exchange, the defendant had a credit balance of $2,300 or $2,400 crediting him with the value of the stocks he then had on hand at the prices at which they had closed on the previous day. One of the plaintiffs testified that he spoke to the defendant's agent on the morning of the 9th of May at about half past 10 or 11 o'clock; that he told the defendant's agent that the market was panicky, and that the plaintiffs needed additional margin, to which the defendant's agent replied that he did not intend to run away, and that the plaintiffs would never lose a dollar by him; that the plaintiffs waited for a while, hoping the market would rally, but, instead of that, it continued to go down, and thereupon the defendant's agent gave to the plaintiffs an order to sell the 100 shares of steel common at the market; that the order was transmitted to the stock exchange, and the stock was sold at $28 a share, and when this sale was reported to the defendant's husband he made no objection. This testimony was corroborated by another customer of the plaintiffs, who was present and heard the conversation. On behalf of the defendant her agent testified that he had charge of this account for his wife; that he instructed the plaintiffs

to sell this stock at 45; that at that time the stock was selling at
45½ according to the quotations from the stock exchange; that
the plaintiffs did not execute this order, and when the witness ask-
ed one of the plaintiffs whether or not he had sold the stock at 45
the plaintiff said that he had not, and that the plaintiff then asked
the witness for a check. In reply the witness said, "You know I
have no check with me, but I will get it for you," when the plain-
tiff said, "I will sell you out," and then went and sold the de-
fendant out, giving her agent no opportunity to get a check, or to
put the margin that was required; and that the witness did not tell
the plaintiff to sell the stock at the market. Upon this evidence
the court submitted the case to the jury, stating that:

"There is practically no dispute that if the 100 shares of steel were sold at
28 the account would show a balance in favor of the plaintiffs, and if the
stock was sold at 45 it would not show a balance. So that the only question
here for you to determine is whether the stock was sold properly, and by
order of the defendant, at 28, or whether it was improperly sold at that
figure; that is, whether the defendant gave an order which is styled by brok-
ers a 'limited order'—that is, one to sell at 45—in this case."

The sole question, therefore, was whether the defendant directed
the plaintiffs to sell the steel at the market, or whether the order
was to sell at 45; for the evidence was undisputed that, if the sale
was not authorized, the stock within a few hours was again selling
at about 45, and that at that price there was no indebtedness to the
plaintiffs. After the court had submitted that question to the
jury, the learned counsel for the defendant made several requests
to charge, to which the court acceded, and to which counsel for
the plaintiffs excepted. The only question in this case is as to
whether there was error in acceding to these requests. Counsel
for the defendant asked the court to charge that "if the jury be-
lieve that said order was given at or about a quarter to twelve of
the morning of May 9, 1901, and that the price at that time was at
or about $42 to $45, the plaintiffs are not entitled to recover, and
the verdict should be for the defendant." The court charged as
requested, and the plaintiffs excepted. I think this was error. The
evidence is that on the 9th of May there was a panic on the stock
exchange, and that all stocks were subject to violent fluctuations.
If the order was given, as claimed by the plaintiffs, to sell at the
market, although at the moment the order was given the market
price of the stock was from $42 to $45, if before the order could be
executed the price had fallen to 28, so that that was the best price
that could be obtained, there was nothing to show but that the
defendant would be bound by the sale as made. The market meant
the best price that could be obtained for the stock at the time the
sale was made, not the price at which the stock was quoted at
that time. According to the defendant, the only order that was
given was to sell at 45, and, if that was the only authority that the
plaintiffs had to sell the stock, as there was no sale at 45, the sale
at 28 was unauthorized. It was entirely immaterial, therefore, at
what price the stock was selling at the time the order was given,
and the instruction given would justify the jury in finding a ver-

dict for the defendant, although they found that the defendant did give an order to sell at 28, if they found as a fact that when the order was given the stock was selling at from 42 to 45.

The court also, at the request of the defendant, charged the jury that if they believed that "when the plaintiffs spoke to the defendant's agent and asked him for additional margin, the defendant's agent said, 'Give me a reasonable time and I will get the additional margin,' or words to that effect, and if they believe that the plaintiffs' reply was that they would sell her out at once, then the plaintiffs are not entitled to recover." This the court charged. I think this was error. Even if the jury believed that the plaintiffs made such a statement, if, at the same time the defendant did authorize the plaintiffs to sell at the market, the plaintiffs were authorized to make such a sale; and, if it was made in good faith, at the best price that could be obtained, the defendant was bound. These requests authorized the jury to find for the defendant, although the order to sell at the market was given; when, if that order was given, it was quite clear that the plaintiffs were entitled to recover, because there was no evidence to show that they did not make the sale in good faith and for the best price that could be obtained at the time the order was executed.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.